**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MAINE**

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED AND FILED
SEP 09 2026
JENNIFER P. LYONS, CLERK
BY
DEPUTY CLERK

**PETER EWING**, Individually, and as Assignee of Record,

*Plaintiff*,

v.

**THE TOWN OF VASSALBORO;**

**THE VASSALBORO SANITARY DISTRICT (VSD);**

**AARON MILLER**, Individually and in his Official Capacity;

**LAUCHLIN TITUS**, Individually and in his Official Capacity

**CHRISTOPHER FRENCH**, Individually and in his Official Capacity;

**RICK DENICO**, Individually and in his Official Capacity; and

**REBECCA GOODRICH**, Individually and in her Official Capacity;

*Defendants.*

**CIVIL ACTION NO:** 1:26-cv-00433-SDN

# COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, SLANDER OF TITLE, CONSTRUCTIVE FRAUD, ILLEGAL EXACTION, AND INJUNCTIVE RELIEF (JURY TRIAL DEMANDED)

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1343 (Civil Rights), as this action arises under the Constitution and laws of the United States, specifically the First, Fifth, and Fourteenth Amendments, enforceable through the Civil Rights Act of 1871, 42 U.S.C. § 1983.
2. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy under Article III of the United States Constitution.
3. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391(b), as all Defendants reside or operate within this judicial district, and a substantial part of the events, omissions, and property giving rise to the claims occurred in Kennebec County, Maine.

## NATURE OF THE ACTION

4. This is a civil rights and anti-corruption action arising from a coordinated scheme executed by municipal officials in Vassalboro, Maine, to systematically strip equity, property, and capital from fixed-income and vulnerable residents under the color of law.

5. Facing massive infrastructure cost overruns and federal loan obligations, Defendants bypassed constitutional utility regulations. Defendants arbitrarily weaponized utility billing, utilizing uncalibrated exactions—including mathematically impossible 3.3x sewer-to-water ratios—to force ratepayers into artificial municipal debt **(See Exhibit F - The Billing Fabrication Matrix)**. When citizens inevitably defaulted on these fabricated charges, Defendants executed defective and forged Municipal Tax Liens (MLIENs) onto the County Registry to slander the victims' titles and trigger automatic foreclosures **(See Exhibit I - The Mass Forgery Portfolio)**.

6. To circumvent public accountability and statutory Eminent Domain procedures, Defendants Aaron Miller and Christopher French weaponized "Best Interest of the Town" municipal warrant articles to intentionally bypass competitive, sealed-bid auctions. Utilizing this invalid policy, the Defendants executed hostile, uncompensated land seizures. This is explicitly documented by the Defendants' deliberate refusal to accept a $5,000 cash tender from legal heirs to settle a minor tax debt. By stalling the family and forcing the foreclosure to execute, the Defendants unconstitutionally seized

the property for municipal use and subsequently issued a written demand extorting $12,819.90 from the heirs to recover a fraction of their own land **(See Exhibit M - The Spaulding Property Modus Operandi)**.

7. When Plaintiff Peter Ewing uncovered the un-audited Tax Increment Financing (TIF) diversions, slush funds, and forged tax liens, Defendant Rick Denico and other municipal actors engaged in active First Amendment Retaliation. To conceal their Fraudulent Conveyance and Spoliation of Evidence, Defendants actively obstructed access to public ledgers and maliciously attempted to censor and destroy the Plaintiff's public communications **(See Exhibit P - First Amendment Retaliation Proof)**.

8. Plaintiff brings this action individually to address severe retaliatory harm, and as the legal Assignee of Record for extorted properties, seeking immediate injunctive relief, the disgorgement of illegal exactions, the clearing of clouded titles, and punitive damages for the Defendants' callous and intentional destruction of constitutional rights **(See Exhibit A - The Assignments of Claim)**.

## PARTIES AND STANDING

9. **Plaintiff Peter Ewing:** A natural person residing in Kennebec County, Maine. Plaintiff Ewing brings this action in two distinct legal capacities:

10. **Individually:** As the primary whistleblower and direct victim of severe First Amendment Retaliation, official oppression, and unconstitutional prior restraint orchestrated by municipal officials **(See Exhibit P - First Amendment Retaliation Proof)**.

11. ***As Principal Assignee of Record:*** *Operating Pro Se as the legal owner of the assigned property grievances and economic injuries of five specific Principal Assignors (including Peter Searles, Eileen Ronco, Jennifer Rivera, Deborah Smith, and Bethany Morse). Through executed, absolute Assignments of Claim* ***(See Exhibit A - The Assignments of Claim),*** *Plaintiff holds absolute standing to recover restitution, special equity damages, and punitive damages for the forty-six (46) documented defective municipal tax liens executed against these specific properties* ***(See Exhibit H - The Mass Lien Roster / The 46 Encumbrances).***

12. **Defendant Town of Vassalboro:** A municipal corporation operating in Kennebec County, Maine. The Town is named as a principal co-conspirator for enforcing unconstitutional tax foreclosures, maintaining unauthorized

municipal slush funds, and actively commingling Tax Increment Financing (TIF) funds to subsidize corporate utility debt.

13. **Defendant Vassalboro Sanitary District (VSD):** A quasi-municipal utility district established in 1972 **(See Exhibit B - The 1972 VSD Charter)**, serving as the primary billing entity responsible for issuing the disputed utility exactions. The VSD utilized the U.S. Postal Service to mail mathematically unsupported, uncalibrated utility bills and executed defective municipal tax liens to encumber ratepayer properties.

14. **Defendant Aaron Miller (Town Manager):** Sued in his Individual and Official capacities. Miller serves as the Chief Administrative Officer and the municipality's designated information custodian. Liability is anchored in his intentional spoliation of evidence—specifically concealing VSD Ledger Book VIII and defying a federal Litigation Hold **(See Exhibit N - The Litigation Hold & Clerk's Receipt)**. Miller further authorized un-audited TIF transfers and directed the execution of the unconstitutional "Best Interest of the Town" foreclosure warrants utilized in the hostile land seizure **(See Exhibit M - The Spaulding Property Modus Operandi)**.

15. **Defendant Lauchlin Titus (VSD Chairman & Town Appeals Board):** Sued in his Individual and Official capacities. Titus operates in direct, documented violation of the 1972 VSD Charter's explicit "Dual-Office Ban." By setting uncalibrated utility rates as VSD Chairman while simultaneously sitting on the Town Appeals Board to adjudicate citizen grievances regarding those exact bills, Titus operates a structurally biased tribunal designed to systematically deprive ratepayers of their 14th Amendment Due Process rights **(See Exhibit C - The Titus Dual-Office Photographic Proof)**.

16. **Defendant Christopher French (Select Board & Maine PUC):** Sued in his Individual and Official capacities. Liability is anchored in a profound Breach of Fiduciary Duty and regulatory conflict of interest. French weaponized his Select Board position to bypass town ordinances and authorize un-audited capital TIF transfers to the VSD. Concurrently drawing a paycheck as an employee of the Maine Public Utilities Commission (PUC), French exploited a "dual-hat" dilemma to shield the VSD's uncalibrated metering from state regulatory oversight. By refusing to recuse himself, French compromised the regulatory firewall and acted as an institutional shield for the municipal utility **(See Exhibit E - The French PUC Legislative Confession)**

17. **Defendant Rick Denico (Select Board & Budget Committee):** Sued in his Individual and Official capacities. Liability is anchored in First Amendment Retaliation and active concealment. Defendant Denico utilized his municipal authority to hunt, censor, and delete the Plaintiff's anonymous public communications regarding the defective liens, demonstrating profound *Scienter* (guilty knowledge) **(See Exhibit P - First Amendment Retaliation Proof)**. This retaliation was directly motivated by the generational exposure of his father, Rick Denico Sr., who historically served on the VSD Board and actively executed municipal tax liens against citizens, establishing the exact motive to protect his family's legacy of municipal encumbrances **(See Exhibit D - The Denico Historical Roster)**.

18. **Defendant Rebecca Goodrich (VSD Treasurer):** Sued in her Individual and Official capacities. Liability is anchored in the mathematical fabrication of billing ledgers, explicitly visualized in the comprehensive billing graphs mapping the uncalibrated utility ratios **(See Exhibit F - The Billing Fabrication Matrix)**, and the active execution of defective proxy signatures under Maine Title 38 **(See Exhibit I - The Mass Forgery Portfolio)**. Goodrich further enforced a discriminatory two-tiered penalty system, weaponizing severe statutory interest rates against fixed-income citizens while selectively suppressing commercial insider rates down to a fraction of a percent **(See Exhibit G - The Disparate Treatment Matrix)**.

19. **DOES 1-10:** Unknown individuals, corporate alter-egos, shell entities, and complicit municipal actors who actively participated in, benefited from, or facilitated the constitutional deprivations and fraudulent conveyances outlined herein.

## FACTUAL ALLEGATIONS

### The Unlawful Exaction Scheme, Structurally Biased Tribunal, and Equal Protection Violations

20. Operating under the color of state law, the Defendants established and maintained a closed administrative framework designed to extract capital, equity, and private real estate from fixed-income ratepayers in the Town of Vassalboro.

21. To service massive debt burdens resulting from infrastructure overruns, Defendant Vassalboro Sanitary District (VSD) abandoned legitimate utility metering. The VSD assessed fixed-income ratepayers mathematically unsupported utility bills, explicitly reflecting 3.3x to 4.8x markups over their verified water intake **(See Exhibit F - The Billing Fabrication Matrix & Visual Graphs)**.

22. Ratepayers subjected to these uncalibrated exactions were deliberately stripped of their 14th Amendment Procedural Due Process rights. Defendant

Lauchlin Titus served concurrently as the Chairman of the VSD (the rate-setting and billing entity) and as an active member of the Town of Vassalboro Board of Appeals (the adjudicating entity) **(See Exhibit C - The Titus Dual-Office Photographic Proof)**.

23. This dual seating directly violated the explicit "Dual-Office Ban" codified in the foundational 1972 VSD Charter **(See Exhibit B - The 1972 VSD Charter)**. By forcing aggrieved citizens to appeal their disputed utility assessments to the very individual who authored and enforced the charges, the Defendants maintained a structurally biased tribunal, ensuring ratepayers had no access to impartial administrative relief.

24. The Defendants enforced these fabricated debts through a discriminatory penalty algorithm. When applying statutory interest to municipal utility liens, Defendant Rebecca Goodrich selectively manipulated interest rates to enrich commercial insiders while financially damaging fixed-income targets.

25. On municipal liens executed against Plaintiff Assignees, the Defendants assessed severe statutory interest rates reaching 66.45%. Conversely, on municipal liens executed against commercial real estate owned by VSD insiders, Defendant Goodrich actively suppressed the interest rates down to a microscopic 0.11% to 0.21% **(See Exhibit G - The Disparate Treatment Matrix)**. This intentional, disparate treatment violates the Equal Protection Clause of the 14th Amendment.

**The Premeditated Extortion Timeline (2014) and "Rotational" Municipal Control**

26. The Defendants cannot claim these extortionate utility multipliers were necessitated by recent infrastructure debts. A forensic review of Assignee Debra Smith's historical utility ledgers reveals a mathematically impossible, predatory billing multiplier established as early as 2014, payable across municipal lines to the Town of Winslow.

27. This decade-long extortion is facilitated by a systemic practice of "rotational seating," wherein municipal actors continuously swap between the VSD Board and Town oversight committees to maintain centralized control and insulate the enterprise from outside scrutiny. Fredrick "Rick" Denico Sr. previously served on the Vassalboro Sanitary District (VSD) Board, actively executing municipal liens against ratepayers. He subsequently rotated to the Town side, exercising authority as a member of the Vassalboro Select Board and the Town Budget Committee during the 2014 timeline when these exact predatory exactions were actively levied against fixed-income citizens.

28. The following historical matrix documents the systemic exaction levied against Assignee Debra Smith while Denico Sr. maintained control on the Town oversight boards, proving the original blueprint of the enterprise was fully operational a decade ago:

- **November 18, 2014:** KWD Water Intake: $83.33 | VSD Sewer Exaction: **$318.73** (Multiplier: 3.82x)

- **January 18, 2015:** KWD Water Intake: $86.16 | VSD Sewer Exaction: **$496.70** (Multiplier: 5.76x)
- **May 13, 2015:** KWD Water Intake: $83.07 | VSD Sewer Exaction: **$324.01** (Multiplier: 3.90x)

29. Today, Defendant Rick Denico Jr. occupies the exact same Select Board and Budget Committee seats his father utilized. This generational continuum of rotational municipal governance provides the direct *Scienter* (guilty knowledge) and motive for Defendant Rick Denico Jr.'s active First Amendment Retaliation. Defendant Denico Jr. weaponized his municipal authority to censor Plaintiff's whistleblowing communications not out of personal harassment, but to actively conceal his family's historical and ongoing participation in this structurally broken enterprise.

**Systemic Execution of Defective Instruments and the Premeditated Extortion Spike**

30.. The execution of the Defendants' municipal tax liens is structurally fraudulent, exhibiting the explicit hallmarks of illegal "Robo-Signing."

31. The Defendants routinely file pre-notarized, chronologically impossible instruments and execute unverified proxy signatures. For example, a lien filed against Assignee Eileen Ronco (Recorded 03/04/2021) explicitly penalizes a "Quarter 3, 2020 Balance," yet the notary acknowledgment swears the document was executed months prior on "March 3, 2020" **(See**

**Exhibit I-1)**. Similarly, a lien executed against Assignee Peter Searles (Recorded 09/22/2016) was signed by Rebecca Goodrich, yet the notary certified that a completely different individual, Lysa Lovley, appeared a full year prior on September 10, 2015 **(See Exhibit I-1)**. Furthermore, on a January 15, 2026 mortgage discharge, Defendant Titus physically signed the instrument, yet the notary certified under oath that "Jenna Davies" appeared **(See Exhibit I-1)**.

32. Furthermore, on the sixteen (16) mass-filed liens recorded on February 9, 2026 **(See Exhibit I - The Mass Forgery Portfolio)**, the instruments explicitly penalize citizens for "Quarter 1, 2025 and Quarter 2, 2025" balances. Yet, Notary Stacy Richmond certified under oath that these instruments were signed in front of her on February 4, 2025.

33. It is physically and chronologically impossible to notarize a municipal debt for Quarter 2 (April–June) in early February. These impossible discrepancies prove the Defendants are mass-producing and pre-notarizing blank lien certificates months before the debt even exists, holding them in a drawer, and weaponizing them later. This reckless disregard for the truth constitutes perjury and renders the liens legally void ab initio.

34. When ratepayers defaulted on these uncalibrated charges, the Defendants executed defective and unauthenticated Municipal Tax Liens (MLIENs) in the Kennebec County Registry of Deeds to unlawfully slander titles and

trigger automatic foreclosures **(See Exhibit H - The Mass Lien Roster / The 46 Encumbrances)**.

35. In an act of profound administrative mismanagement and/or intentional malice designed to artificially inflate municipal debt metrics, the Defendants engaged in deliberate timeline manipulation. On February 15, 2024, the Defendants officially acknowledged on the public record compiling a synchronized spike of 54 municipal tax liens totaling $25,473.82. This gross acceleration of fabricated debt was executed immediately prior to requesting a $200,000 TIF diversion from the Town, demonstrating a systemic fiduciary breach and a calculated weaponization of the citizens' equity **(See Exhibit J - The 54-Lien Extortion Spike)**.

**Un-Audited TIF Diversions, Municipal Slush Funds, and Continuous E&O Liability**

36. **The Fiduciary Breach (Miller-to-Miller):** Upon information and belief, this financial pipeline was facilitated by severe, undisclosed conflicts of interest, notably the overlapping authority of Town Manager Aaron Miller (controlling the municipal budget and executing the TIF transfers) and Lisa Miller (seated on the receiving VSD Board of Trustees), establishing blatant self-dealing and a direct violation of Maine's Conflict of Interest statutes.

**37.** To conceal municipal deficits, Town Manager Aaron Miller and Christopher French repeatedly executed un-audited transfers of public Tax Increment Financing (TIF) funds to the VSD, completely bypassing the mandatory

auditing constraints of the 2014 TIF Ordinance (See Exhibit R - The 2014 TIF Ordinance).

**38.** The Defendants blindly transferred $100,000 in 2019, $200,000 in 2024, and an emergency $50,000 on March 19, 2026. Because these distinct, unauthorized administrative failures occurred continuously across multiple years, they explicitly trigger and consecutively stack the Town of Vassalboro's Public Officials Liability (P.O.L.) and Errors & Omissions (E&O) insurance policies for each respective year.

**39.** To evade state auditing scrutiny, the Defendants parked a massive $354,999 unexplained surplus inside the 2026-2027 Municipal Budget under Account 10-01 ("Library Operations") **(See Exhibit L - The Slush Fund Anomalies & Titus Affidavit).**

**40.** When Plaintiff publicly questioned this massive capital surplus during the municipal town meeting convened to vote on the budget, members of the Vassalboro Budget Committee dismissively claimed that the $354,999 entry—which they had explicitly published on the released draft budget—was simply a "typo." A $354,000 discrepancy on a published municipal budget draft is not a clerical error; it is a hallmark of constructive fraud, intentional ledger manipulation, and the maintenance of unauthorized slush funds. This "typo" defense constitutes a direct admission by the Defendants that municipal accounting controls have been entirely abandoned, rendering all financial transfers legally suspect and subject to immediate forensic audit.

**41.** Demonstrating systemic administrative failure and severe accounting distress, Defendant Aaron Miller formally admitted on the public record during the October 16, 2025 Select Board hearing that the Town landed $35,000.00 over budget for annual audit expenses due to hiring external auditors to perform basic bank reconciliations. Defendant Christopher French subsequently supported authorizing additional emergency surplus funds to cover these audit failures rather than enforcing statutory accounting controls, further establishing an active breach of fiduciary oversight and consciousness of financial mismanagement **(See Exhibit R - The 2014 TIF Ordinance, pp. 14–15).**

**42.** Demonstrating profound consciousness of guilt, state corporate registry records confirm that on March 19, 2026—the exact same day the Select Board executed the un-audited $50,000 TIF transfer—a related municipal shell entity, "ME I VASSALBORO CEMETERY LLC," was administratively dissolved to destroy the financial paper trail **(See Exhibit K - The March 19th Synchronization)**.

**43.** Demonstrating a clear, vested interest in this specific sector of municipal funding, Defendant Lauchlin Titus publicly intervened during the June 2, 2026, municipal town meeting. Despite his primary role as Chairman of the VSD (overseeing sewer utilities), Defendant Titus proactively took the floor to aggressively defend the municipal cemetery budget after the Plaintiff publicly questioned the Delaware LLC. This unprompted defense explicitly

links the VSD Chairman to the capital pool tied to the dissolved shell entity **(See Exhibit L - The Slush Fund Anomalies & Titus Affidavit)**.

**The 5th Amendment Takings Clause (*Tyler v. Hennepin County*)**

44. To monetize foreclosed assets without public accountability or statutory Eminent Domain procedures, Defendants Aaron Miller, Christopher French, Rick Denico, and the Vassalboro Select Board actively drafted and advanced invalid "Best Interest of the Town" municipal warrant articles. By deliberately presenting these defective articles for a municipal vote, the Defendants intentionally circumvented established state law and mandatory competitive, sealed-bid auction requirements, despite possessing full actual knowledge of the governing statutory frameworks.
45. Utilizing this intentionally drafted policy, the Defendants executed a hostile, uncompensated taking of the "Spaulding Estate." Following a tax foreclosure over a minor $2,028.65 debt, the legal heirs publicly tendered $5,000 in cash to settle the balance. The Defendants deliberately refused the legal tender, stalled the family, and allowed the foreclosure to take effect.
46. On May 26, 2026, Defendant Miller formally confirmed in writing that the Select Board intended to retain 4.7 acres for the municipal transfer station and demanded an extortionate ransom of $12,819.90 from the heirs to recover the remaining 1.5 acres, explicitly violating the 5th Amendment Takings Clause **(See Exhibit M - The Spaulding Property Modus Operandi)**.

**Spoliation, Active Concealment, and Civil Conspiracy**

47. On March 26, 2026, Plaintiff hand-delivered a formal Omnibus Notice and Litigation Hold to the Town Office, placing the municipality under a strict federal evidence preservation lockdown. The municipal clerk physically signed for the packet, establishing Actual Notice. In a coordinated act of spoliation and civil conspiracy, Defendants Aaron Miller, Lauchlin Titus, and the Vassalboro Select Board collectively ignored the mandate and failed to tender the claim to their insurance carriers **(See Exhibit N - The Litigation Hold & Clerk's Receipt)**.

48. Demonstrating an ongoing Civil Conspiracy, Plaintiff subsequently submitted a master FOAA request via FedEx on March 31, 2026. This delivered package explicitly contained three separately labeled, internally sealed parcels directed to: (1) Town Manager Aaron Miller, (2) The Vassalboro Select Board, and (3) Lauchlin Titus (in his capacity on the Boards of Appeal).

49. Following their coordinated silence regarding the March 26 Omnibus Notice, the Defendants colluded to consolidate their FOAA response to shield Defendant Titus and the Select Board from legal scrutiny. Instead of each party addressing their respective, legally mandated records requests, Defendant Miller actively intercepted the individually routed parcels that were not addressed to him. On April 6, 2026, Miller executed a solitary 'Deemed Denial' on behalf of the entire enterprise, intentionally acting as a

shield while falsely claiming foundational VSD ledgers were missing **(See Exhibit O - The FOAA Denial & Chain of Custody Trap)**.

50. Demonstrating further consciousness of guilt following the Litigation Hold, the Defendants unilaterally executed rapid Mortgage Discharges upon the Kennebec County Registry of Deeds by deploying a proxy signatory. Specifically, the Defendants rapidly discharged forged liens on May 18, 2026, and June 5, 2026, prior to judicial review. These unauthorized expungements include Book 15747, Page 0299 for Assignee Peter Searles, despite the underlying disputed assessments remaining entirely unpaid and unabated. **(See Exhibit Q - The Post-Hold Panic Discharges)**.

51. Demonstrating a profound consciousness of guilt and immediate flight risk, Defendant Aaron Miller actively engineered an exit strategy synchronized precisely with the exposure of the municipal enterprise. On July 13, 2026, at 4:49 PM, Defendant Miller formally fulfilled a public records request surrendering documents regarding the unconstitutional seizure of the Spaulding Property at 159 Lombard Dam Road. On that exact same day—July 13, 2026—documentary evidence from the Maine Municipal Association (MMA) confirms Miller submitted a formal application to flee his current jurisdiction for a Town Manager position in Skowhegan. When subsequently questioned regarding this synchronized timeline, Miller aggressively attempted to sever the legal connection to his flight, falsely claiming his exit

strategy fell "entirely outside the scope of public business" **(See Exhibit S - The July 13th Flight Risk Records)**

52. To protect himself from anticipated municipal retribution and official harassment, Plaintiff Peter Ewing exercised his clearly established constitutional right to engage in pseudonymous whistleblowing speech (*McIntyre v. Ohio Elections Commission*, 514 U.S. 334 (1995)) by utilizing a digital pseudonym ("Mark") on a public forum to alert the community to the 16 defective municipal tax liens. In direct confirmation of Plaintiff's well-founded fear of retaliation, Defendant Rick Denico abused his municipal authority to hunt, track, and maliciously file false "harassment" reports to censor, de-anonymize, and suppress Plaintiff's protected speech **(See Exhibit P - First Amendment Retaliation Proof)**

53. Under the federal doctrine of Voluntary Cessation, the Defendants cannot moot this civil rights lawsuit by unilaterally abandoning their illegal conduct and discharging fraudulent liens only after facing litigation. The tortious acts, including Slander of Title, encumbrance of real property, and procedural due process deprivations, were fully realized the moment the void instruments were executed and recorded against the Assignees' properties.

**Tolling of the Statute of Limitations via Fraudulent Concealment (14 M.R.S. § 859)**

54. The Defendants actively, maliciously, and systematically concealed their enterprise from the ratepayers. By utilizing defective proxy signatures, secretly suppressing insider interest rates, claiming foundational ledgers were "missing," and utilizing municipal authority to actively censor the Plaintiff's digital communications, the Defendants engaged in severe Fraudulent Concealment.

55. The Plaintiff and the Assigned Claimants did not, and could not have, reasonably discovered the mechanics of this synchronized fraud until the Plaintiff conducted a forensic audit of the Kennebec County Registry of Deeds in early 2026. Therefore, pursuant to the Discovery Rule and 14 M.R.S. § 859, all applicable statutes of limitations are strictly tolled, granting Plaintiff the absolute legal right to seek full restitution and disgorgement for the entire multi-year lifespan of the fraud without arbitrary chronological caps.

## CAUSES OF ACTION

### COUNT I: Deprivation of Civil Rights – Procedural Due Process and Equal Protection

**(42 U.S.C. § 1983 and 14th Amendment of the U.S. Constitution)**

56. Plaintiff realleges and incorporates all previous paragraphs.

57. Defendants Lauchlin Titus, Aaron Miller, the VSD, and the Town of Vassalboro, acting under the color of state law, systematically deprived the

assigned claimants and the ratepayers of Vassalboro of their 14th Amendment rights.

58. The Defendants structurally compromised the administrative appeals process. By permitting Defendant Titus to concurrently serve as the Chairman of the VSD (setting rates) and as a member of the Town Appeals Board (adjudicating grievances), the Defendants established a structurally biased tribunal in direct violation of the 1972 VSD Charter's explicit dual-office ban **(See Exhibit B - The 1972 VSD Charter & Exhibit C - The Titus Dual-Office Photographic Proof)**. This rendered any local administrative remedy illusory.

59. Furthermore, Defendant Rebecca Goodrich and the VSD violated the Equal Protection Clause by administering a disparate penalty structure. The VSD levied severe statutory interest rates reaching 66.45% against fixed-income citizens, while selectively and manually suppressing interest rates for commercial properties owned by municipal insiders down to a fraction of a percent **(See Exhibit G - The Disparate Treatment Matrix)**.

**COUNT II: Slander of Title and Fraud Upon the Registry**

**(14 M.R.S. § 6651 and Common Law Fraud)**

60. Plaintiff realleges and incorporates all previous paragraphs.

61. Defendants VSD, Rebecca Goodrich, Lauchlin Titus, and the Town maliciously recorded dozens of factually defective, unverified, and legally void municipal tax liens in the Kennebec County Registry of Deeds to unlawfully cloud the titles of the Plaintiffs' properties **(See Exhibit H - The Mass Lien Roster / The 46 Encumbrances)**.

62. Specifically, Defendants executed synchronized municipal tax liens on February 9, 2026, bearing the unverified, proxy-forged signature of "Donna Daviau," as well as additional instruments bearing the proxy signature of "Jenna Davies" **(See Exhibit I - The Mass Forgery Portfolio)**. These unauthenticated instruments are void *ab initio* under Maine Title 38 and were intentionally filed to encumber real property and extract unlawful payments.

**COUNT III: Deprivation of Civil Rights – Takings Clause**

**(42 U.S.C. § 1983 and 5th Amendment of the U.S. Constitution)**

63. Plaintiff realleges and incorporates all previous paragraphs.

64. Defendants Town of Vassalboro, Aaron Miller, and Christopher French seized private property for municipal use without just compensation.

65. Defendants weaponized the municipal tax code and utilized invalid "Best Interest of the Town" warrants to conduct hostile land acquisitions. This is explicitly demonstrated by their documented refusal to accept legal tender

($5,000 cash) from legal heirs, thereby allowing a foreclosure to execute so the municipality could unconstitutionally seize the property to bypass statutory Eminent Domain procedures **(See Exhibit M - The Spaulding Property Modus Operandi)**.

**COUNT IV: Breach of Fiduciary Duty, Ultra Vires Acts, and Spoliation (State Law Claims)**

66. Plaintiff realleges and incorporates all previous paragraphs.
67. Defendant Christopher French committed ultra vires acts and a severe breach of his common-law fiduciary duty by exploiting his dual roles. As a regulatory employee of the Maine PUC—an agency mandated to protect consumers and ensure utility transparency—Defendant French owed an undivided duty of loyalty to the taxpayers of Vassalboro. Instead of executing a mandatory, voluntary recusal to avoid the appearance of impropriety, Defendant French willfully destroyed the regulatory firewall. He engaged in administrative bias by voting to bypass the 2014 TIF Ordinance, transferring un-audited public capital to bail out the VSD (See Exhibit R - The 2014 TIF Ordinance). In doing so, Defendant French leveraged his regulatory authority to act as an institutional shield, deliberately protecting the municipal enterprise from state scrutiny and statutory auditing constraints **(See Exhibit K - The March 19th Synchronization).**

68. Defendants Aaron Miller, Lauchlin Titus, and the Town of Vassalboro Select Board committed intentional Spoliation of Evidence and engaged in a Civil Conspiracy by actively defying a federally mandated Litigation Hold delivered on March 26, 2026 **(See Exhibit N - The Litigation Hold & Clerk's Receipt)**. Furthermore, Defendant Miller executed 'Deemed Denials' to actively shield Defendant Titus and conceal foundational municipal ledgers from judicial review **(See Exhibit O - The FOAA Denial & Chain of Custody Trap)**.

**COUNT V: First Amendment Retaliation & Active Concealment**

**(42 U.S.C. § 1983)**

69. Plaintiff realleges and incorporates all previous paragraphs.
70. Defendant Rick Denico, acting in his Individual Capacity, engaged in severe retaliation and unconstitutional prior restraint against a public whistleblower.
71. Following the public exposure of the defective municipal tax liens, Defendant Denico actively hunted the digital footprint of the Plaintiff and weaponized reporting mechanisms to suppress Plaintiff's pseudonymous whistleblowing speech. Because Plaintiff published under a pseudonym to shield against government reprisal, Defendant Denico's unilateral efforts to silence and de-anonymize the post demonstrate retaliatory animus, intentional content-

based censorship, and active *Scienter* (guilty knowledge) to protect his family's historical lien legacy **(See Exhibit D & Exhibit P)**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Peter Ewing, individually and as Assignee of Record for the affected ratepayers, respectfully requests that this Honorable Court enter judgment against the Defendants, jointly and severally, as follows:

## COMPENSATORY, RESTITUTION & SPECIAL EQUITY DAMAGES

### Defective Instrument Multiplier

72. Award Special Equity Damages in the amount of $250,000.00 per defective municipal tax lien executed against the assigned properties, representing the intentional clouding of title, financial encumbrance, and lost equity opportunities caused by the Defendants' legally void instruments.

- For Plaintiff Assignee (Peter Searles): $5,750,000.00 (Based on 23 documented defective encumbrances).
- For Plaintiff Assignee (Eileen Ronco): $5,750,000.00 (Based on 23 documented defective encumbrances).
- For Plaintiff Assignees (Rivera, Smith, Morse): $750,000.00 combined.

### Illegal Exaction Disgorgement

73. Award Compensatory Damages and full Restitution/Disgorgement for every uncalibrated utility bill mailed to the Plaintiff and Assigned Claimants. Upon information and belief, the Defendants executed four uncalibrated bills annually per ratepayer. Plaintiff demands full disgorgement of all funds unlawfully collected through these billing cycles, plus a compensatory penalty of $10,000.00 for every mathematically unsupported bill transmitted over the lifespan of the enterprise. Calculating a 12-year history for Assignees Searles, Ronco, Morse, and Smith, and a 5-year history for Assignee Rivera, this totals 212 defective bills, resulting in a fixed disgorgement penalty of **$2,120,000.00.** The burden of proof shifts to the Defendants to produce calibrated, audited intake ledgers during discovery to dispute this calculation.

**First Amendment Retaliation**

74. Award Compensatory and Punitive Damages to Plaintiff Peter Ewing in the amount of $4,000,000.00 against Defendant Rick Denico, in his Individual Capacity, for severe and malicious First Amendment Retaliation, unconstitutional prior restraint, and the active concealment of public evidence.

**Punitive Damages (Individual Capacities)**

75. Award Punitive Damages against Defendants Aaron Miller, Lauchlin Titus, and Rebecca Goodrich in their Individual Capacities in an amount to be

determined by a jury, but no less than $1,000,000.00, for acts of intentional malice, including the mathematical fabrication of utility ratios and the weaponization of disparate statutory interest rates in violation of the 14th Amendment Equal Protection Clause.

**Tif Replenishment & Continuous Insurance Trigger**

76. Plaintiff demands full restitution and immediate replenishment of all illegally disbursed municipal Tax Increment Financing (TIF) funds, specifically encompassing the $100,000 transfer from 2019, the $200,000 transfer from 2024, and the $50,000 transfer executed on March 19, 2026.

**Continuous Trigger & Per-Claimant Stacking**

77. Because the Defendants' gross mismanagement and constitutional violations occurred continuously over a multi-year period, Plaintiff explicitly demands that the Town of Vassalboro's and the VSD's respective Public Officials Liability (P.O.L.), Errors & Omissions (E&O), and Directors & Officers (D&O) insurance policies spanning the 10-year lookback window be consecutively triggered and stacked. These insurance liability limits must be applied *per claimant, per occurrence*, without arbitrary aggregation caps, to fully satisfy the judgments herein.

**DECLARATORY & INJUNCTIVE RELIEF**

78. Issue a Declaratory Judgment stating that the municipal tax liens filed by the VSD bearing the defective, non-facsimile signatures of "Donna Daviau" and "Jenna Davies" are void *ab initio* under Maine Title 38.

79. Issue an immediate Emergency Temporary Restraining Order (TRO) and Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65, specifically freezing the title, boundaries, and physical state of the real property located at 159 Lombard Dam Road (Map 012, Lot 012). The Defendants and their agents are strictly enjoined from subdividing, selling, or altering this parcel pending the adjudication of the 5th Amendment Takings Clause violations.

80. Issue a Preliminary and Permanent Injunction immediately halting all foreclosure, eviction, and collection actions related to the disputed VSD accounts, and ordering the Defendants to discharge all affected liens from the Kennebec County Registry of Deeds.

**Appointment of a Special Master / Forensic Accountant**

81. Appoint an independent Special Master or Forensic Accountant, pursuant to Federal Rule of Civil Procedure 53, to oversee, monitor, and audit all ongoing utility payments collected by the Vassalboro Sanitary District (VSD), **as well as the Town of Vassalboro's Tax Increment Financing (TIF) reserves and contested municipal surplus accounts (specifically Account 10-01),** during the pendency of this litigation to prevent further spoliation of public funds.

**Judicial Referral for Notary Revocation**

82. Issue a formal Judicial Referral directing the Maine Secretary of State and the Maine Office of the Attorney General to investigate Notary Public Stacy Richmond for Tampering with Public Records (17-A M.R.S. § 456) and Unsworn Falsification (17-A M.R.S. § 453), and to immediately suspend and revoke her Notary Public commission for systematically executing statutorily void municipal tax liens bearing knowingly false notary acknowledgments (including the "Donna Daviau" and "Jenna Davies" proxy signatures) upon the Kennebec County Registry of Deeds.

**Treble Damages (Preservation Of Rico Rights)**

83. Plaintiff reserves the absolute right to amend this complaint following initial discovery to demand Treble Damages under 18 U.S.C. § 1964(c) (Civil RICO) upon the judicial unsealing of the Defendants' master TIF ledgers and municipal bank accounts.

**Additional Relief**

84. Award Plaintiff all costs of litigation, allowable fees, and such other and further relief as this Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

*Executed under penalty of perjury this 8th day of September, 2026.*

**Peter Ewing, Pro Se**

PO BOX 1684

Waterville, Me 04903

207-360-9300

Chapter89@proton.me

# Master Exhibit List

## I. Standing, Structure, & Regulatory Capture

- **Exhibit A: The Assignments of Claim.** The executed, absolute assignment contracts establishing Plaintiff's legal standing and ownership of the property grievances and economic injuries previously held by the Principal Assignors (Peter Searles, Eileen Ronco, Jennifer Rivera, Deborah Smith, and Bethany Morse).
- **Exhibit B: The 1972 VSD Charter.** The foundational utility document explicitly highlighting the "dual-office ban."
- **Exhibit C: The Titus Dual-Office Photographic Proof.** Photographic and municipal page evidence placing Lauchlin Titus on the Town Appeals Board while concurrently serving as VSD Chairman.
- **Exhibit D: The Denico Historical Roster.** Certified Town of Vassalboro Annual Reports proving Rick Denico Sr. historically sat on the VSD Board and was responsible for filing municipal liens on properties. This establishes the direct historical link and the exact retaliatory motive for why Defendant Rick Denico Jr. weaponized his municipal authority to silence Plaintiff.
- **Exhibit E: The French PUC Legislative Confession.** Christopher French's written LD 187 testimony confirming his dual employment with the Maine PUC and the Vassalboro Select Board.

## II. Extortion, Disparate Treatment, & Forgery

- **Exhibit F: The Billing Fabrication Matrix & Visual Graphs.** The multi-party billing ledgers, including the visual KWD vs. VSD cross-reference graphs proving the uncalibrated 3.3x to 4.8x multipliers.

- **Exhibit G: The Disparate Treatment Matrix.** The side-by-side registry filings mathematically proving a predatory 66.45% interest penalty for fixed-income citizens versus the manually suppressed 0.11% to 0.21% rates for VSD commercial insiders.

- **Exhibit H: The Mass Lien Roster (The 46 Encumbrances).** The aggregated Kennebec County Registry index (including the "Batch" screenshots) mathematically documenting the 46 defective encumbrances executed against the Principal Assignors.

- **Exhibit I: The Mass Forgery Portfolio.** Certified copies of the sixteen (16) synchronized municipal tax liens recorded on February 9, 2026, bearing the defective proxy signatures of "Donna Daviau".

- **Exhibit I-1: The Historical Forgery & Proxy Defects.** Certified registry copies proving the "Jenna Davies" proxy identity swap on the January 15, 2026 mortgage discharge, the chronologically impossible "Time Traveler" defect on the Eileen Ronco lien (notarized March 3, 2020), and the "Frankenstein" copy-pasted Lysa Lovley notary stamp on the Peter Searles lien (September 22, 2016).

- **Exhibit J: The 54-Lien Extortion Spike.** The official February 15, 2024 VSD meeting minutes explicitly proving the Defendants artificially compiled 54 liens (totaling $25,473.82) right at the end of the year to inflate debt metrics immediately prior to demanding a $200,000 TIF bailout.

### III. Slush Funds, Fiduciary Abandonment, & Takings

- **Exhibit K: The March 19th Synchronization.** The certified March 19, 2026, Select Board minutes documenting the un-audited $50,000 TIF transfer, paired directly with the Delaware Secretary of State Certificate of Cancellation for "ME I VASSALBORO CEMETERY LLC" executed on the exact same day.

- **Exhibit L: The Slush Fund Anomalies & Titus Affidavit.** The official 2026-2027 Municipal Budget highlighting the $354,999 surplus parked under Account 10-01 ("Library Operations"), paired directly with Plaintiff's Sworn Affidavit certifying that Lauchlin Titus aggressively intervened to defend the municipal cemetery budget at the June 2 town meeting.
- **Exhibit M: The Spaulding Property Modus Operandi.** The complete 5th Amendment land-grab bundle: the October 2020 Select Board minutes, the transcript refusing the $5,000 cash payment, and Aaron Miller's written demand extorting $12,819.90.

**IV. Spoliation, Chain of Custody, & Cover-Up**

- **Exhibit N: The Litigation Hold & Clerk's Receipt.** The time-stamped March 26 Omnibus Notice paired with the physical signature of the municipal clerk proving Actual Notice.
- **Exhibit O: The FOAA Denial & Chain of Custody Trap.** The March 31 FedEx receipt explicitly proving delivery to both the Town Manager and the Boards of Appeal, paired directly with Aaron Miller's April 6 "Deemed Denial" email falsely claiming VSD Ledger Book VIII is missing.
- **Exhibit P: First Amendment Retaliation Proof.** Digital screenshots proving Rick Denico Jr. actively hunted and falsely reported the whistleblower post to protect his father's dual-office legacy, combined with his written admission claiming he "pushed the wrong button."
- **Exhibit Q: The Post-Hold Panic Discharges.** The rapid May 18 and June 5, 2026 registry discharges executed immediately following the delivery of the federal Litigation Hold to clean the crime scene.
- **Exhibit R: The 2014 TIF Ordinance.** The rules governing the un-audited $100,000 (2019), $200,000 (2024), and $50,000 (2026) capital transfers.

- **Exhibit S: The July 13th Flight Risk Records.** Documentation proving Aaron Miller surrendered records and applied for a Skowhegan Town Manager position on the exact same afternoon.